l-'C’SCOMB, J.
TVo do not propose to discuss all of the questions present ■ l by rff; record and the assignment of errors, in this case, hut only such as ap >.-a - ,o u-s to be material to its iiaal disposition.
T.*;o <!.-f 'riant, in tiie court below, offered to give in evidence the record of the s et e '.d suits that had been instituted, in which he was a party, in relation to-tho lot nions of laud scrip, by him, on Galveston Gland. Tins evidence was ruled tur r . inadmissible. We are unable, to perceive any objection in law to the ¡vlmi- lihilfy of this evidence, considering the subject-matter in controversy b-'tvwt'n tiie parties. Tiie suit was for a portion of .the land obtained by tiie d.‘f lint on these locations; and it was important to show why it was that Lie defendant did not obtain title for as much ¡is the scrip, located by him, called for. And again, the suit claimed, that, in the matter of these locations, to a ceruiin extent, tiie defendant was acting as trustee for the plaintiffs. 3-Iow far l hese proceedings and tiie judgments thereupon, concluded the plaintiffs, wa i not of the question; but it was as to their admissibility: and we believe i hat. they should have been received as evidence of facts material to a fair (hvi- lon of the rights of tiie parties in tiie suit. The plaintiffs, too, had, in their p-d. i. ion, referred to the pretended litigation and difficulties about tiie legal title to the hinds located by tiie defendant, and had, therefore, rendered it neces.siry that the defendant should relieve himself from the imputation by ■showingYuat this litigation really had existed.
It is alleged in that tiie given receipt to the plaintiff for Idle land scrip placed in his hands for location, and that this receipt ha l been given up to him on his pledging other scrip of an equal amount ai collateral security for the original scrip; and that this was procure 1 t ¡rough the fraudulent representations of the defendant to Buxton Layi.n, a member of the linn, who knew nothing of the correspondence of the defen ia it wirli tiie firm. This ifilegatioii is denied on by the defendant; and in hi-isís that the surrender of his receipt and the receipt of land scrip, to ,a:i equal amount, was intended and was a cancellation of the origin.: ' o.-'!, met.
Te ■ - ¡ ¡\i-fer of the transaction between Buxton Layton and the defendant is ve ;n ; -rial. The plaintiffs allege that it was only collateral to, and in aid of, th . • •'■■■ contract, by which the plaintiffs obtained certain other scrip, in the plae ■. i -.at delivered to tiie defendant, as collateral security. Tiie petitioners all:'.' • >.iii time, that tiie scrip received from the defendant was collateral seciY ••• ir delivering up to them the particular scrip received by him; and, at an . e, that it was collateral security for tiie performance of his contract, on t'. • ¡ ,iet of the defendant. It would'be hard to reconcile either with deliv-erin' up the defendant’s receipt to him. If either the one or the other had been ¡ ’¡e object, it is strange that tiie receipt, the evidence of the original con-trae. : houl.l be surrendered at the same time. In support of the allegations, in r; 1■ u to tills transaction, there is tiie evidence of one witness only, Mr. Willi ■ i ; and he swears that it was an agreement for a collateral security; but K 1 wolves himself in the same dilemma as presented by the allegations of tli. p-ution, in relation to tiie matter. He says that in the summer of 1841 ’‘r. Buxton Layton called on Mr. E. Hall for an account of the scrip. Mr. Lull stated that the scrip was in the hands of the surveyor, and had been ■mislai-!; that he could not find the surveyor to get the scrip. Mr. E. Hall then .gave Mr. Buxton Layton other scrip as security for the original 3,200 acres, 'until lie (Hall) could get the original 3,200 acres to return to B. Layton. Mr. *30 Hall then asked lor his (Hall’s) receipt, to bo given back to him or given up, as lie had given 3,200 acres scrip as securitj'- lor the return of the original 3,200 acres intrusted to him. Mr. B. Layton then returned to Mr. Hall the receipt Hall originally gave for the 3,200 acres. This evidence is so wholly inconsistent with the conduct of a man capable of transacting mercantile affairs, that I shall be unwilling to sustain it as a sufficient basis to the verdict of a jury, it is impossible to believe that any one, talcing- collateral security for a contract, would commit the folly to deliver up to the adverse party the only evidence of that original contract. I have no doubt that it was, and was intended to be, a cancellation of tiie contract, and that Buxton Layton received the scrip as his own, and not in pledge as security, That ho may have been imposed upon by Hall, is not free from doubt; but that he canceled the contract, by which Hall had undertaken to locate the lands, there is no doubt. If it was procured by the fraud of Hall, and was so alleged and proven, it would restore the obligation of the first contract. The evil leuce of the fraud is not so satisfactory as it ought to he to set aside the settlement made between Buxton Layton and Hall, in 1841.
The jury found for tiie plaintiffs fifteen hundred acres of land on Galveston island, valued at six thousand dollars in cash.
On this finding the court entered up a final decree. We shall in this place only notice so much of the decree as relates to tiie title defendant was required to convey to the plaintiffs : “ That the said conveyance shall contain a covenant “ of warranty that tiie premises therein described are free from all incumbrances “ or liabilities of or caused by the said defendant; and a further covenant that “the title thereto is now vested in tiie said defendant.”
The plaintiffs, if entitled to a decree at all, could not ask a title superior in degree to the one received by the defendant from the Government. If that title was not good tiie complainants would have to risk the consequences, in proportion to the land they obtained, to tiie same extent that tiie defendant took it subject to. They, by their petition, seek to hold the defendant as a trustee for their use; and, to strip it of technical language, they say the defendant has procured a patent in his own name for the land that ought, under his contract, to have been in the name of tiie and all that have a right to ask or the court authority to decree is the title the defendant has derived by his patent from tiie Government. This, with a warranty that he has not created any incumbrance on the title, is all that could have been decreed to them. Tiie last covenant required by tiie decree, “that tiie title is “now vested in the defendant-,” is unauthorized, and cannot be sustained. On tiie principles of equity jurisprudence tiie previous covenants were all that could rightfully have been required of the defendant. Under the last, enjoined by tiie decree to be inserted, it would subject tiie defendant to a suit for breach of covenant if the patent should prove to be invalid, or if the land should be taken by a superior title subsisting before the issuance of tiie patent.
The petition, in no part of it, asks or seeks compensation; it only asks a transfer of laud. And on tiie petition, answer, and evidence, there is nothing to authorize the jury to find what, according to their opinion, would be adequate compensation for failure to make the title. Penalty in money is not one of tiie modes by which chancery enforces its decrees. In cases like the present, where there is no allegation that tiie defendant lias put it out of his power to make title, there can be no difficulty in enforcing obedience to tiie decree. If the defendant had sold and conveyed to an innocent purchaser, and had lost all control over the title, the petition, in such cases, should be for compensation. The petition and answer framed no issue of tiie value of tiie land on which tiie jury could pass, and there was none directed by the court to be tried by them. So much of their verdict, then, as fixed the alternative basis for the decree, must be disregarded. This suit being one entirely seeking relief upon principles of equity jurisprudence, and there being certain facts to be proven and found by the jury to enable the court to make a decree disposing of the equitable rights of the plaintiffs, there ought to have been appropriate *31 issues made up under the direction of tiie court and presented to tiie jury to pass upon. When a petition and answer like tiie present are put to tiie jury they must have but a very imperfect knowledge o£ what it is their duty to of their verdict. There to have been issues for the jury to pass upon, whether there had been a contract between the parties? If so, whether it had been canceled? If canceled, whether that cancellation had been procured by the fraud of the defendant? IIow much land, if any, the plaintiffs were entitled to from tiie evidence ? AfI or the jury had responded to these issues, the judge, on the basis oí tito facts so found, could have framed his decree the principles of equity front them.
If we .wore satisfied that the evidence established ihe fact that the cancellation of the original contract between the parties liad been induced by the fraud of the appellant, it would he our duty to reform the decree, and make a final disposition of the case. But we are not satisfied with the evidence of fraud; and in the absence of fraud on tiie part of the defendant, we are clear that the plaintiffs were not entitled to a recovery at all. AYe cannot attach as much consequence to the finding of the jury, on tins question ,of fraud, as it would have been entitled to had that question been distinctly put to them on an issue of fraud or no fraud. AVhen tiie whole petition was put to them, we are not certain but the jury may have believed that there was no fraud, but that the origiual contract had not been canceled; and if they found on that § round we entertain no doubt but then- verdict was contrary to evidence. 'or this reason we believe that we ought not to reform the decree, but reverse and remand; and this is the unanimous opinion of the court.
[Reversed and remanded.
Note 10. — Same case, 16 T., 262; 25 T., 204.